Edythe G. HARRELL, Executrix of the Estate of R. L. Westover, deceased; Edythe G. Harrell, Individually, Appellant,

v.

John WESTOVER et al., Appellees.

Court of Appeals of Kentucky.

Oct. 14, 1955.

198

L. M. Ackman, Williamstown, for appellant.

Lee Lanter, Williamstown, John L. Vest, Walton, for appellees.

CLAY, Commissioner.

This suit involves the final settlement of the estate of R. L. Westover. On exceptions to the trial court's findings, the executrix, Edythe Harrell, appealed and the heirs-at-law have cross-appealed. It will be necessary to review briefly prior litigation between these parties over the estate of the testator.

In 1948, a suit was brought by the heirs to contest the will of R. L. Westover. A jury upheld the will and no appeal was taken.

A second suit was brought in 1949 to construe this will, particularly Clause IV thereof. This clause provided:

> "All the remaining property that I own, consisting of my residence in Williamstown, my farm at Crittenden, consisting of 211 acres more or less, my personal property (excepting that specified in paragraph 2), is to be sold by my executor and the proceeds divided among my natural heirs, as the law may provide."

After the execution of his will, testator sold his Crittenden property and deposited the proceeds in the Bank of Williamstown to his individual account. At the time of testator's death, $11,278.28 remained in the account. The heirs claimed this account under Clause IV. The executrix maintained that the money belonged to her under Clause II, which provided, among other things, that she receive "all money on deposit in banks in my name". The Grant Circuit Court found for the heirs and this finding was upheld in Westover's Ex'x v. Westover, 313 Ky. 545, 233 S.W.2d 105.

Thus things stood when the heirs brought the present settlement suit. The contentions of the parties will be taken up in the order they appear in the judgment of the Grant Circuit Court.

–1–

■ The first finding involved the question of whether or not the sum adjudged to

the heirs should bear interest. Their contention is based on the theory that the judgment was against Edythe Harrell in her personal capacity rather than in her fiduciary capacity. To support this contention, they point to the judgment which recites: "Wherefore, it is ordered and adjudged that the plaintiffs herein recover of the defendants herein, Edythe G. Harrell, executrix of R. L. Westover, deceased and Edythe G. Harrell, individually, the sum of $11,-278.28, * * *." The case of Farber's Ex'r v. Farber, 285 Ky. 596, 148 S.W.2d 732, is cited. There it was held an executor must pay interest on a judgment when ordered to turn over the entire estate to one who had contested the executor's right to take the estate as his personal property under the terms of the will.

However, it does not appear that this case and the Farber case stand on the same footing. In the Farber case, once the judgment had been rendered there remained nothing more for the executor to do but transfer the estate property from himself to the successfully contending party. The judgment in that case was dispositive of all the rights of the parties under the will. Such was not the situation here, since the suit did not make a final disposition of the estate property. It still remained for the executrix to administer the estate. Interest on this item was properly disallowed.

–2–.

■ The second finding of the circuit court was that executrix' costs in the will construction suit should be a charge against the entire estate. The heirs took exception to this ruling because in that suit costs of litigation were awarded to them. The heirs contend that to charge this item to the whole estate would result in charging part of these costs to them contrary to the judgment.

This contention would be correct if we assume the order in the previous suit was directed to Edythe Harrell in her personal capacity only, and not to her in her official capacity as executrix. That suit was primarily aimed at Miss Harrell in her official capacity, to guide her in the final disposition of testator's estate. We will not disturb this finding.

–3–

■ This exception involves inheritance taxes paid by the executrix for the heirs. It is contended by them that too much was deducted from their inheritance for the tax in that they were assessed $91.02 each on $1,961.57. Inasmuch as KRS 140.070 provides that only 4% of what is ultimately received shall be paid as inheritance tax, it seems there was a slight overcharge. However, because of the uncertainty as to the ultimate shares of the heirs, and because the amount involved is so infinitesimal, we apply the rule of de minimus and will not disturb the judgment.

–4–

■ In her final settlement the executrix has taken credit for a real estate broker's commission and also a bill for advertising in the Grant County News. Both of these items of expense were incurred in connection with the sale of the residence and furniture of the testator. We are of the opinion that these items are incidental expenses created by the executrix in the administration of the estate, and, therefore, she should be allowed a credit for them. Taylor v. Taylor, 223 Ky. 799, 4 S.W.2d 752. In 91 A.L.R. at page 829 the writer states:

"The right of an executor or administrator to an allowance for commissions paid a broker employed to sell the real property of an estate seems to be clear if authority to sell is directly or indirectly given by the will."

This finding will not be disturbed.

–5 and 6–

■ These two items can be dealt with jointly. Item (5) is a $3,000 charge for Miss Harrell's attorney in the defense of the will contest suit. Item (6) is a $750 attorney's fee for general legal assistance in the administration of the estate. The low-

er court allowed both these items and ordered that they be charged to the whole estate. The heirs take no exception to the amount of these fees, but they do object to their being charged to the estate. They recognize the well established principle that it is the duty of an executor to defend any suit contesting the validity of the instrument he has been appointed to execute and that the expense of such a defense is a proper charge against the whole estate. They also recognize the rule that an executor may engage an attorney to handle the legal aspects of administration. They contend, however, that the facts of this case bring these charges under an exception to the general rule. Reference is made to Douglas' Adm'r v. Douglas' Ex'r, 243 Ky. 321, 48 S.W.2d 11, where the court recognized that when the services of an attorney are rendered to advance the interest of the personal representative in his personal capacity and not in his representative capacity, then the estate should not be charged with the attorney's fees. The heirs point out that under the will here involved, with the exception of a $500 bequest, the executrix was the only person who stood to gain from a decision upholding the will.

We do not think the facts of this case bring it within the principle contended for by the heirs. The cases following that principle fall generally into one of two categories: (1) Where the executor was the sole beneficiary under the will or (2) where the executor acted in bad faith. Neither of those facts are here present, and recognizing Miss Harrell's duty to resist efforts to set aside the will, the court properly allowed these items.

–7–

■ The circuit court allowed a fee of $1,500 to the heirs' attorneys for services in this settlement suit, to be charged against the entire estate. We believe this a reasonable amount and was properly charged.

While the litigation in the construction suit previously alluded to was still pending, the heirs and their attorneys entered into a contract concerning fees, under which the heirs agreed to pay their attorneys 40% of anything that might be recovered over and above that which was conceded by the executrix to belong to the heirs under the terms of the will. Some question is raised concerning a possible overlapping of the 40% fee and the court allowance, but we do not deem it necessary to resolve this accounting problem.

–8–

■ The next question presented involves a promissory note executed by the executrix to the testator, dated June 6, 1946, payable twelve months after date. On the back of this note was a typewritten statement reading: "In the event of the death of R. L. Westover, this note is to be cancelled and destroyed. (Signed) R. L. Westover." The executrix contends this note is not an asset constituting a part of the estate, because the indorsement changed it into a contractual obligation which was cancelled at the death of the testator. We do not believe any sort of a contemporaneous contractual relationship was established between the executrix and testator by the execution of the note and the indorsement. In the case of Milligan v. Gwinn's Adm'r, 291 Ky. 21, 163 S.W.2d 31, cited by the executrix, there were valid contractual obligations, the creditor agreeing to extinguish the debt at his death, and the debtors agreeing to meet substantial burial expenses of the creditor. Here the executrix furnished no such consideration.

Further, we do not believe the indorsement constituted a gift of the note. In the case of Rodemer v. Rettig, 114 Ky. 634, 71 S.W. 869, the maker, George Rettig, executed a note to his wife's mother, Barbara Rodemer; at the bottom of the note was written, " 'This note, however, to become null and void on the death of said Barbara Rodemer. (Signed) Geo. Rettig.' " There was evidence that the daughter of the payee, who was the wife of the maker, should have it as a gift. There was no delivery of the note to the daughter. The court held there was no gift.

Since there was insufficient evidence of any completed delivery by the payee to the payor of the note to satisfy the requirement of a valid gift, the note remained an asset of the estate on the death of the testator. The trial court properly so adjudged.

–9–

■ Another question presented concerns a check for $150 written by Edythe Harrell to herself on the Grant County Deposit Bank. On this check she signed the name of R. L. Westover by Edythe G. Harrell, and indorsed the check, and it was paid on May 22, 1946. Miss Harrell testified that this $150 was a loan to her. She further testified that she paid the money back in cash and asked for a receipt. The circuit court correctly held that so much of Miss Harrell's statement that the $150 was a loan to her was competent. The circuit court was also correct in excluding her testimony that she had paid the money back. This testimony was incompetent under Section 606(2) of the Civil Code of Practice (now KRS 421.210(2), being a statement of or transaction with the deceased. The judgment correctly charged the executrix with this amount and interest.

–10–

■ The next question relates to the disposition of $2,367.43 which the testator had on deposit in his name in the Citizens Bank of Dry Ridge, Kentucky, at the time of his death. Both parties claim this sum. The executrix' contention is that the testator by the will left her "all my money on deposit in banks in my name". The heirs contend that the former opinion in the will construction case, Westover's Ex'x v. Westover, 313 Ky. 545, 233 S.W.2d 105, recognized that the executrix was only entitled to the deposit in the Grant County Deposit Bank. While the principal issue in that case was the disposition of another

account in the Bank of Williamstown, we reached the conclusion that the executrix was only entitled to the one bank deposit in the Grant County Deposit Bank, which was used in the operation of the testator's newspaper. That ruling was plainly stated in the opinion and has become the law of the case. The court's disposition of this item was correct.

–11–

■ The last question to be considered is whether or not the executrix should be given credit for the payment of $65 per year as premium on her surety bond of $15,000. The heirs claim that it was unnecessary for the executrix to carry this surety bond after May 10, 1948, because of a stipulation entered into by the parties on that date. They contend that this stipulation, and another entered into on April 18, 1947, along with other evidence, shows that there was no reason for the surety bond after May 10, 1948.

The first stipulation provided that all the money of the estate was to be paid out upon the joint action of the executrix and Mr. Lanter, one of the attorneys for the heirs, until the estate was ready for final distribution. The second stipulation provided that approximately $26,000 should be held on a restricted basis, until the final determination of the suit in the Grant Circuit Court. The heirs contend that the executrix was worth enough in her own right, so that the bond was no longer necessary after the second stipulation had been made.

The executrix' net worth is immaterial. Under the stipulations the heirs did not agree to dispense with this bond. KRS 395.130 requires the execution of bond with good surety and provides that the reasonable cost incident to the bond shall be a lawful charge against the estate. We find no merit in the contention of the heirs.

The judgment is affirmed.